NO. 07-06-0280-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

OCTOBER 17, 2008
______________________________
Â 
JERRY WAYNE BANNISTER, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_________________________________

FROM THE COUNTY COURT AT LAW NO. 2 OF HENDERSON COUNTY;

NO. 2005-0854CL2; HONORABLE NANCY PERRYMAN, JUDGE
_______________________________

Â 
Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.
DISSENTING OPINION
Â Â Â Â Â Â Â Â Â Â My colleagues agree that the trial courtâs judgment must be reversed, but have 
different reasons for their conclusion. Respectfully disagreeing with both their opinions,
I would affirm the trial courtâs judgment, and thus must dissent from the Courtâs judgment
reversing the trial court. 
Â 
Â 
Â Â Â Â Â Â Â Â Â Â Franks hearing
Â Â Â Â Â Â Â Â Â Â Chief Justice Quinn finds persuasive appellantâs contention the trial court reversibly
erred by not giving him a hearing on his Franks motion. See Franks v. Delaware, 438 U.S.
154, 171-72, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). Although I agree trial courts should
err on the side of giving, rather than denying, hearings, I believe the trial court here did not
abuse its discretion by denying appellant a Franks hearing. 
Â Â Â Â Â Â Â Â Â Â Appellantâs motion for a Franks hearing asserted the investigatorâs affidavit
contained two false statements, made deliberately or with a reckless disregard for the truth.
The motion attacked the investigatorâs statement, âAffiant is familiar with the home of
[appellant]. The pictures Affiant has viewed are pictures taken of the home, carport and
outbuildings of [appellant]. Affiant has been to the above-described residence, carport and
outbuildings and it is the same residence, carport and outbuildings where [appellant]
presently lives.â The motion asserted the photographs were not taken at appellantâs home
but at another home. Appellant appended to his motion additional photographs of his
home and of the home at which the motion said the photographs incorporated into the
search warrant affidavit were taken.
Â Â Â Â Â Â Â Â Â Â Assuming that the motion and its appended photographs provide a sufficient
preliminary showing that the affidavitâs statement that the photographs the affiant viewed
were taken at appellantâs residence was false, I nonetheless would find the motion gave
the trial court no basis for a conclusion the investigator made the false statement
deliberately or with reckless disregard for the truth. I do not believe we can infer from the
photographs themselves that the affidavit was made with a reckless disregard for the truth.
See Cates v. State, 120 S.W.3d 352, 357-58 (Tex.Crim.App. 2003) (motion gave
statement of reasons supporting assertion officer knew information in affidavit was false,
thereby satisfying Franks); Dancy v. State, 728 S.W.2d 772, 782-83 (Tex.Crim.App. 1983)
(applying requirement of intentional or reckless false statement). See generally George
E. Dix & Robert O. Dawson, Texas Practice: Criminal Practice and Procedure Â§Â§ 6.38, 6.42
(2d ed. 2001) (discussing Franks requirement that false statement be made with
accompanying mental state). Without a statement of reasons, appellantâs assertion a false
statement was made deliberately or with reckless disregard for the truth was merely
conclusory. Cates, 120 S.W.3d at 355 (to be entitled to a hearing, a defendant must make
a substantial preliminary showing that a false statement knowingly and intentionally, or with
reckless disregard for the truth, was included by the affiant in the warrant affidavit; the
challengerâs attack must be more than conclusory).
Â Â Â Â Â Â Â Â Â Â Appellantâs Franks motion also challenged as false the investigatorâs statement,
âAffiant has also seen marijuana in his experience as a peace officer and that [sic] one of
the pictures shows what Affiant believes to be marijuana in the hand of [appellant].â 
Appellant attached to his motion an enlarged copy of the photograph referred to in the
affidavit. His motion asserted the enlarged copy âclearly show[s] that Affiant could not
identify anything in [appellantâs] hands much less marijuana.â The photograph shows
appellant and another man. The other man is wearing the mask apparatus and appellant
is holding one hand under the bowl of the pipe while reaching toward the bowl with his
other hand. It appears appellant is holding something in his extended fingers, about to
place the item in the pipe. From the copies of the photographs in the appellate record, we
agree it is difficult to identify what, if anything, appellant is holding in his fingers. The
statement in the affidavit, however, is that the picture shows âwhat Affiant believesâ to be
marijuana. Even the enlarged photograph, which the investigator of course had not seen
when he signed the affidavit, does not disprove that appellant is holding marijuana. And,
given the nature of the pictured apparatus and the context of the photograph, his stated
belief that appellant is shown holding marijuana is not unreasonable. Â 
Â Â Â Â Â Â Â Â Â Â I conclude the trial court reasonably could have found that appellantâs Franks motion
did not make a substantial preliminary showing that the statement regarding marijuana in
the affidavit was false. Even if I am mistaken in that conclusion, I would conclude further
that deleting the statement from the affidavit would not have rendered it insufficient to
support issuance of the search warrant. The warrant sought drug paraphernalia, not
marijuana. 
Â Â Â Â Â Â Â Â Â Â For those reasons, I would find the trial court did not abuse its discretion by denying
a Franks hearing. 
Â Â Â Â Â Â Â Â Â Â Probable cause
Â Â Â Â Â Â Â Â Â Â Although the magistrateâs determination of the existence of probable cause for the
issuance of the warrant necessarily was made solely from his review of the officerâs
affidavit and its accompanying photographs, and we have the same information in front of 
us, our review of the magistrateâs decision to issue the warrant is not de novo, but one in
which we must give great deference to the magistrateâs finding of probable cause.
Rodriguez v. State, 232 S.W.3d 55, 59-60 (Tex.Crim.App. 2007); Swearingen v. State,
143 S.W.3d 808, 811 (Tex.Crim.App. 2004) (Cochran, J., dissenting). See also Gates v.
Illinois, 462 U.S. 213, 236, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (noting âthat after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of a de
novo review. A magistrateâs âdetermination of probable cause should be paid great
deference by reviewing courtsââ).
Â Â Â Â Â Â Â Â Â Â I would find that the affidavit and photographs gave the magistrate here a
substantial basis to conclude there was a fair probability that drug paraphernalia would be
found at appellantâs residence. See Rodriguez, 232 S.W.3d at 60 (describing probable
cause and standards for review of issuance of warrant). 
Â Â Â Â Â Â Â Â Â Â The affidavit told the magistrate that the peace officer affiant knew appellant, and
had been to appellantâs home and was familiar with it; that the photographs depicting the
presence of the device were taken at appellantâs home; that the affiant had âlearnedâ
appellant was married on April 23; that on the date of the affidavit, May 4, the affiant saw
wedding decorations at appellantâs home; and that the photographs had been obtained
from âCVS in Athens, Texasâ by search warrant on May 3. 
Â Â Â Â Â Â Â Â Â Â The affidavit stated the affiantâs belief that the photographs were taken at appellantâs
wedding reception. Justice Pirtle is correct that the affidavit and photographs do not
demonstrate that the photographs were taken at the wedding reception, or that they were
taken on April 23. But the photographs depict an apparent social gathering of some kind,
and, given the other information presented to the magistrate, I think an inference agreeing
with the officerâs belief that the photographs were taken at the wedding reception was
reasonable.
Â Â Â Â Â Â Â Â Â Â Appellant also argues that the magistrate could draw no inference about the date
the photographs were made from the fact they were seized from a photo processor on May
3. He points out that film may be taken to a processor months, if not years, after the
photographs were taken. The argument reflects the kind of second-guessing that is
improper under the standard of review that binds us here. Rodriguez, 232 S.W.3d at 60-61; Davis v. State, 202 S.W.3d 149, 157 (Tex.Crim.App. 2006). See also Brown v. State,
243 S.W.3d 141, 145 (Tex.App.âEastland 2007, pet. refâd) citing Gates, 462 U.S. at 235-36
(judicial review must take into account that many warrants are issued on the basis of
nontechnical, common-sense judgments of laymen applying a standard less demanding
than that used in formal legal proceedings). Certainly photos may be processed long after
they were taken, and many of us have delayed having photos processed for months or
years. Many people, however, do not engage in that kind of delay, and I think the
magistrate was entirely free to draw the inference that these photographs were at the
processor because they were recently taken. 
Â Â Â Â Â Â Â Â Â Â In my judgment, the magistrate was not required to infer anything to conclude the
mask device appearing in the photographs likely constituted an item of drug paraphernalia. 
That conclusion simply required the magistrate to apply his common sense to the scenes
depicted in the photographs. Appellant is seen in the photographs assisting three different
people with an apparatus similar to a gas or oxygen mask with a pipe attached. Each of
the three people appellant is assisting is wearing the apparatus, its mask covering the
wearerâs nose and mouth. In one photograph, appellant appears to be placing something
in the bowl of the pipe. In another, appellant appears to be lighting the pipe. Further, the
officerâs affidavit stated he had experience and training in drug investigations, and stated
his belief that the apparatus was a form of âmarijuana pipe.â The affidavit also described
the apparatus as appearing to be âa device or apparatus designed or adapted to be used
illegally to inhale marijuana.â The affidavit and photographs gave the magistrate ample
basis for a conclusion the apparatus was drug paraphernalia.
Â Â Â Â Â Â Â Â Â Â Appellant argues none of the photographs depict him exercising actual care,
custody, control or management of the mask. I disagree. One of photographs shows him
adjusting the straps of the mask around the head of another person, actions that constitute
control of the mask. 
Â Â Â Â Â Â Â Â Â Â Further, as depicted in the photographs, the mask device was not a consumable or
perishable item, but one of âenduring utility to its holder.â Swearingen, 143 S.W.3d at 813 
(Cochran, J., dissenting) quoting Andresen v. State, 24 Md.App. 128, 331 A.2d 78, 106
(Md. Ct. Spec. App.1975). The magistrate could infer that its holder would keep it following
its use on the occasion shown in the photographs. Granted, an inference that appellant
was the holder was required. But, again, I think the information given the magistrate
permitted such a reasonable inference. The magistrate was told the device was being
used at appellantâs home. The photographs showed three different people wearing the
mask, but appellant was the common denominator in the photographs, assisting each of
the three people with its use. Of those shown in the photographs, appellant had the most
frequent contact with the device. Case law reminds us that probable cause deals with
probabilities. Rodriguez, 232 S.W.3d at 62. See also Dixon v. State, 206 S.W.3d 613, 619
n.20 (Tex.Crim.App. 2006), citing Gates, 462 U.S. at 231 (â[i]n dealing with probable cause,
as the very name implies, we deal with probabilitiesâ).
Â Â Â Â Â Â Â Â Â Â Probable cause cannot be founded on merely conclusory statements of the affiantâs
belief. Rodriguez, 232 S.W.3d at 61. Here, the affidavit and photographs provided the
magistrate substantially more information than such conclusory statements. Considering
the totality of the circumstances presented by the affidavit and its attached photographs,
and given the deference we owe to the magistrateâs determination of probable cause, I
would find the magistrate had a substantial basis for a common-sense conclusion that the
device sought by the warrant probably still could be found at appellantâs residence. See
Rodriguez, 232 S.W.3d at 62 (stating standard). 
Â Â Â Â Â Â Â Â Â Â Based on the foregoing, I would affirm the trial courtâs judgment. Because the Court
does not, I respectfully dissent.
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â James T. Campbell

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Justice





Do not publish. 




er 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoFooter, li.MsoFooter, div.MsoFooter
 {mso-style-priority:99;
 mso-style-link:"Footer Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 tab-stops:center 3.25in right 6.5in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoCaption, li.MsoCaption, div.MsoCaption
 {mso-style-noshow:yes;
 mso-style-priority:35;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 mso-pagination:widow-orphan;
 font-size:9.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.MsoFootnoteReference
 {mso-style-priority:99;
 vertical-align:super;}
span.MsoEndnoteReference
 {mso-style-noshow:yes;
 mso-style-priority:99;
 vertical-align:super;}
p.MsoEndnoteText, li.MsoEndnoteText, div.MsoEndnoteText
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Endnote Text Char";
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoTitle, li.MsoTitle, div.MsoTitle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpFirst, li.MsoTitleCxSpFirst, div.MsoTitleCxSpFirst
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpMiddle, li.MsoTitleCxSpMiddle, div.MsoTitleCxSpMiddle
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin:0in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoTitleCxSpLast, li.MsoTitleCxSpLast, div.MsoTitleCxSpLast
 {mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Title Char";
 mso-style-next:Normal;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:15.0pt;
 margin-left:0in;
 mso-add-space:auto;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD 1.0pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;
 mso-bidi-language:EN-US;}
p.MsoSubtitle, li.MsoSubtitle, div.MsoSubtitle
 {mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Subtitle Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 mso-bidi-language:EN-US;
 font-style:italic;}
a:link, span.MsoHyperlink
 {mso-style-priority:99;
 color:blue;
 text-decoration:underline;
 text-underline:single;}
a:visited, span.MsoHyperlinkFollowed
 {mso-style-noshow:yes;
 mso-style-priority:99;
 color:purple;
 mso-themecolor:followedhyperlink;
 text-decoration:underline;
 text-underline:single;}
p.MsoAcetate, li.MsoAcetate, div.MsoAcetate
 {mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-link:"Balloon Text Char";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoNoSpacing, li.MsoNoSpacing, div.MsoNoSpacing
 {mso-style-priority:1;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-parent:"";
 margin:0in;
 margin-bottom:.0001pt;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraph, li.MsoListParagraph, div.MsoListParagraph
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpFirst, li.MsoListParagraphCxSpFirst, div.MsoListParagraphCxSpFirst
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpMiddle, li.MsoListParagraphCxSpMiddle, div.MsoListParagraphCxSpMiddle
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:.5in;
 margin-bottom:.0001pt;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoListParagraphCxSpLast, li.MsoListParagraphCxSpLast, div.MsoListParagraphCxSpLast
 {mso-style-priority:34;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-type:export-only;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:.5in;
 mso-add-space:auto;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
p.MsoQuote, li.MsoQuote, div.MsoQuote
 {mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Quote Char";
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:black;
 mso-bidi-language:EN-US;
 font-style:italic;}
p.MsoIntenseQuote, li.MsoIntenseQuote, div.MsoIntenseQuote
 {mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-link:"Intense Quote Char";
 mso-style-next:Normal;
 margin-top:10.0pt;
 margin-right:.65in;
 margin-bottom:14.0pt;
 margin-left:.65in;
 line-height:115%;
 mso-pagination:widow-orphan;
 border:none;
 mso-border-bottom-alt:solid #4F81BD .5pt;
 padding:0in;
 mso-padding-alt:0in 0in 4.0pt 0in;
 font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 color:#4F81BD;
 mso-bidi-language:EN-US;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleEmphasis
 {mso-style-priority:19;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:gray;
 font-style:italic;}
span.MsoIntenseEmphasis
 {mso-style-priority:21;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.MsoSubtleReference
 {mso-style-priority:31;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 text-decoration:underline;
 text-underline:single;}
span.MsoIntenseReference
 {mso-style-priority:32;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 color:#C0504D;
 letter-spacing:.25pt;
 font-weight:bold;
 text-decoration:underline;
 text-underline:single;}
span.MsoBookTitle
 {mso-style-priority:33;
 mso-style-unhide:no;
 mso-style-qformat:yes;
 font-variant:small-caps;
 letter-spacing:.25pt;
 font-weight:bold;}
p.MsoTocHeading, li.MsoTocHeading, div.MsoTocHeading
 {mso-style-noshow:yes;
 mso-style-priority:39;
 mso-style-qformat:yes;
 mso-style-parent:"Heading 1";
 mso-style-next:Normal;
 margin-top:24.0pt;
 margin-right:0in;
 margin-bottom:0in;
 margin-left:0in;
 margin-bottom:.0001pt;
 line-height:115%;
 mso-pagination:widow-orphan lines-together;
 page-break-after:avoid;
 font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:"Times New Roman";
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 mso-bidi-language:EN-US;
 font-weight:bold;}
span.Heading1Char
 {mso-style-name:"Heading 1 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 1";
 mso-ansi-font-size:14.0pt;
 mso-bidi-font-size:14.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#365F91;
 font-weight:bold;}
span.Heading2Char
 {mso-style-name:"Heading 2 Char";
 mso-style-noshow:yes;
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 2";
 mso-ansi-font-size:13.0pt;
 mso-bidi-font-size:13.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading3Char
 {mso-style-name:"Heading 3 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 3";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;}
span.Heading4Char
 {mso-style-name:"Heading 4 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 4";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
span.Heading5Char
 {mso-style-name:"Heading 5 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 5";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;}
span.Heading6Char
 {mso-style-name:"Heading 6 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 6";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#243F60;
 font-style:italic;}
span.Heading7Char
 {mso-style-name:"Heading 7 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 7";
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.Heading8Char
 {mso-style-name:"Heading 8 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 8";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;}
span.Heading9Char
 {mso-style-name:"Heading 9 Char";
 mso-style-priority:9;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Heading 9";
 mso-ansi-font-size:10.0pt;
 mso-bidi-font-size:10.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#404040;
 font-style:italic;}
span.TitleChar
 {mso-style-name:"Title Char";
 mso-style-priority:10;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Title;
 mso-ansi-font-size:26.0pt;
 mso-bidi-font-size:26.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#17365D;
 letter-spacing:.25pt;
 mso-font-kerning:14.0pt;}
span.SubtitleChar
 {mso-style-name:"Subtitle Char";
 mso-style-priority:11;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Subtitle;
 mso-ansi-font-size:12.0pt;
 mso-bidi-font-size:12.0pt;
 font-family:"Arial","sans-serif";
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:"Times New Roman";
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:"Times New Roman";
 color:#4F81BD;
 letter-spacing:.75pt;
 font-style:italic;}
span.QuoteChar
 {mso-style-name:"Quote Char";
 mso-style-priority:29;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Quote;
 color:black;
 font-style:italic;}
span.IntenseQuoteChar
 {mso-style-name:"Intense Quote Char";
 mso-style-priority:30;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Intense Quote";
 color:#4F81BD;
 font-weight:bold;
 font-style:italic;}
p.NewDocument, li.NewDocument, div.NewDocument
 {mso-style-name:"New Document";
 mso-style-unhide:no;
 mso-style-qformat:yes;
 mso-style-next:Normal;
 margin-top:0in;
 margin-right:0in;
 margin-bottom:10.0pt;
 margin-left:0in;
 line-height:115%;
 mso-pagination:widow-orphan;
 font-size:12.0pt;
 mso-bidi-font-size:11.0pt;
 font-family:"Arial","sans-serif";
 mso-fareast-font-family:Arial;
 mso-bidi-language:EN-US;}
span.BalloonTextChar
 {mso-style-name:"Balloon Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Balloon Text";
 mso-ansi-font-size:8.0pt;
 mso-bidi-font-size:8.0pt;
 font-family:"Tahoma","sans-serif";
 mso-ascii-font-family:Tahoma;
 mso-hansi-font-family:Tahoma;
 mso-bidi-font-family:Tahoma;
 mso-bidi-language:EN-US;}
span.HeaderChar
 {mso-style-name:"Header Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Header;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.FooterChar
 {mso-style-name:"Footer Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:Footer;
 mso-ansi-font-size:11.0pt;
 mso-bidi-font-size:11.0pt;
 mso-bidi-language:EN-US;}
span.EndnoteTextChar
 {mso-style-name:"Endnote Text Char";
 mso-style-noshow:yes;
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Endnote Text";
 mso-bidi-language:EN-US;}
span.FootnoteTextChar
 {mso-style-name:"Footnote Text Char";
 mso-style-priority:99;
 mso-style-unhide:no;
 mso-style-locked:yes;
 mso-style-link:"Footnote Text";
 mso-bidi-language:EN-US;}
span.pmterms11
 {mso-style-name:pmterms11;
 mso-style-unhide:no;
 color:black;
 font-weight:bold;
 font-style:normal;}
span.GramE
 {mso-style-name:"";
 mso-gram-e:yes;}
.MsoChpDefault
 {mso-style-type:export-only;
 mso-default-props:yes;
 mso-ascii-font-family:Arial;
 mso-fareast-font-family:Arial;
 mso-hansi-font-family:Arial;
 mso-bidi-font-family:Arial;}
 /* Page Definitions */
 @page
 {mso-footnote-separator:url("07-10-0284-CR%20%20Opinion_files/header.htm") fs;
 mso-footnote-continuation-separator:url("07-10-0284-CR%20%20Opinion_files/header.htm") fcs;
 mso-endnote-separator:url("07-10-0284-CR%20%20Opinion_files/header.htm") es;
 mso-endnote-continuation-separator:url("07-10-0284-CR%20%20Opinion_files/header.htm") ecs;}
@page WordSection1
 {size:8.5in 11.0in;
 margin:1.0in 1.0in 1.0in 1.0in;
 mso-header-margin:.5in;
 mso-footer-margin:.5in;
 mso-title-page:yes;
 mso-footer:url("07-10-0284-CR%20%20Opinion_files/header.htm") f1;
 mso-paper-source:0;}
div.WordSection1
 {page:WordSection1;}
-->








NO. 07-10-0284-CR

Â 

IN THE COURT OF APPEALS

Â 

FOR THE
SEVENTH DISTRICT OF TEXAS

Â 

AT
AMARILLO

Â 

PANEL C

Â 

 APRIL 13, 2011



Â 

Â 



Â 

Â 

DEXTER WAYNE GREENE, APPELLANT

Â 

v.

Â 

THE STATE OF TEXAS, APPELLEE 



Â 

Â 



Â 

Â FROM CRIMINAL DISTRICT COURT NO.
THREE OF TARRANT COUNTY;

Â 

NO. 1160937D; HONORABLE ELIZABETH BERRY, JUDGE



Â 

Â 



Â 

Before QUINN, C.J., andÂ  HANCOCK and
PIRTLE, JJ.

MEMORANDUM OPINION

Â Â Â Â Â Â Â Â Â Â Â  Appellant, Dexter
Wayne Greene, pled guilty in open court to two counts of sexual assault of a
child[1] and was sentenced to two consecutive eighteen year
sentences.[2]Â  In a single point of error, Appellant asserts
the trial court violated his right to due process guaranteed by the Fourteenth Amendment of the United States
Constitution by excluding evidence of his written and recorded statements
to the police during his punishment trial.Â 
We affirm.Â  Â 

Background

Â Â Â Â Â Â Â Â Â Â Â  On
July 14, 2009, a Tarrant County Grand Jury returned an indictment against
Appellant alleging that he intentionally and knowingly caused the sexual organ
of W. H., a child younger than seventeen years of age who was not Appellant's spouse,
to contact Appellant's mouth on April 1 and May 1 of 2008, Counts One and Two
respectively.Â  Appellant subsequently
pled guilty to both counts and a punishment trial was held before a jury.

Â Â Â Â Â Â Â Â Â Â Â  Prior
to the punishment trial, the State successfully moved to prohibit any mention
of Appellant's oral or written statements to the police on the grounds that the
statements were self-serving and inadmissible hearsay.Â  At the punishment trial, Sergeant Detective
Tom Milner testified on direct examination, in pertinent part, as follows:

STATE:Â Â Â Â Â Â Â Â Â  [W.
H.] didn't ask any adults for help, did he?

MILNER:Â Â Â Â Â Â Â  No.

STATE:Â Â Â Â Â Â Â Â Â  [W.
H.] tried to handle it himself?

MILNER:Â Â Â Â Â Â Â  Yes.

STATE:Â Â Â Â Â Â Â Â Â  In
fact, [W. H.] tried to push him off, didn't he?

MILNER:Â Â Â Â Â Â Â  [W.
H.] did say that he had a fight with him, yes.

STATE: Â Â Â Â Â Â Â Â  But,
I mean, independent of pushing him off, the fight was later, Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  wasn't
it?

MILNER:Â Â Â Â Â Â Â  Yes.

STATE:Â Â Â Â Â Â Â Â Â  [W.
H.] tried to push him off one time.Â 
Another time when the defendant tried to get [W. H.] to go to sleep,
that's when the fight began?

MILNER:Â Â Â Â Â Â Â  Yes.

STATE:Â Â Â Â Â Â Â Â Â  What
did [W. H.] do?

MILNER:Â Â Â Â Â Â Â  [W.
H.] stated he hospitalized [Appellant], cracking his ribs.

STATE:Â Â Â Â Â Â Â Â Â  [W.
H.] hurt him?

MILNER:Â Â Â Â Â Â Â  Yes.

STATE:Â Â Â Â Â Â Â Â Â  [W.
H.] wanted it to stop, and [Appellant] wouldn't
take no for an answer?

MILNER:Â Â Â Â Â Â Â  No.

Â Â Â Â Â Â Â Â Â Â Â  On cross examination, Detective Milner testified, in
pertinent part, as follows:

DEFENSE:Â Â Â  Did you just state
that [W. H.] offered that he---I'm sorry.Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  What did you just say about the
fight?

MILNER:Â Â Â Â Â Â Â  Said
that he hospitalized [Appellant].

DEFENSE:Â Â Â  All
right.Â  And [W. H.] gave you a reason
why?

MILNER:Â Â Â Â Â Â Â  He
said that [Appellant] was trying to get him to go to sleep, so Appellant could
perform sexual acts on him.

DEFENSE:Â Â Â  And
do you have any reason to believe that there's anything that explains or
contradicts that?

MILNER:Â Â Â Â Â Â Â  No.

Â Â Â Â Â Â Â Â Â Â Â  Appellant then sought to introduce his out-of-court oral
and written statements to Detective Milner to explain or contradict Milner's
testimony regarding W. H.'s reasons for breaking Appellant's ribs and
hospitalizing him.[3]Â  Appellant asserted that the State "opened
the door" in its direct examination of Milner and Appellant's statements
were necessary mitigation evidence regarding whether the sexual acts were
forced or consensual.Â  The State asserted
that no evidence of Appellant's statements was offered in Detective Milner's
direct examination and it was defense counsel that "opened the door"
to whether other evidence existed that explained or contradicted Detective
Milner's account of W. H.'s motivation for breaking Appellant's ribs.Â  The trial court denied Appellant's
request.Â  

Â Â Â Â Â Â Â Â Â Â Â  At
the trial's conclusion, the jury found Appellant guilty of Counts One and Two in
the indictment and sentenced Appellant to two consecutive sentences of eighteen
years confinement.Â  Â This appeal followed.

Discussion

Â Â Â Â Â Â Â Â Â Â Â  Appellant asserts that his own out-of-court
statements were admissible as mitigation evidence because the statements
directly contradicted Detective Milner's testimony that W. H. had told him that
he was fending off Appellant's sexual advances when he cracked Appellant's
ribs.Â  Further, Appellant argues that,
due to Detective Milner's blanket declaration that he was unaware of any
evidence that contradicted or explained W. H.'s version of why he fractured
Appellant's ribs, the jury was given the false impression that Appellant was
physically aggressive towards W. H.Â  Appellant
asserts this created a false impression that led the jury to assess
near-maximum sentences.Â  The State counters
contending the trial court correctly excluded Appellant's statements because
they were inadmissible hearsay and unnecessary to explain or contradict any
evidence first offered by the State.Â  

Standard of Review

Â Â Â Â Â Â Â Â Â Â Â  We
review a trial court's decision to admit evidence under an abuse of discretion
standard.Â  Walters v. State, 247 S.W.3d 204, 217 (Tex.Crim.App. 2007) (citing Apolinar v. State, 155 S.W.3d 184, 186
(Tex.Crim.App. 2005)).Â  A trial court
abuses its discretion only when the decision lies "outside the zone of
reasonable disagreement."Â  Id.Â 
Â 

Self-serving Statements

Â Â Â Â Â Â Â Â Â Â Â  The general rule in Texas is that self-serving statements
are generally inadmissible as proof of the facts they assert.Â  Allridge
v. State, 762 S.W.2d 146, 152 (Tex.Crim.App. 1988), cert. denied, 489 U.S. 1040, 109 S.Ct. 1176, 103 L.Ed.2d 238
(1989).Â  Testimony by
third persons as to an accused's self-serving declarations are hearsay and thus
inadmissible.Â  Moore v. State, 849 S.W.2d 350, 351 n.1
(Tex.Crim.App. 1993) (citing DeRusse v.
State, 579 S.W.2d 224, 233 (Tex.Crim.App. 1979)).Â  

Â Â Â Â Â Â Â Â Â Â Â  There are exceptions, however, to this general rule.Â  Allridge,
762 S.W.2d at 152. A self-serving statement may be
admissible if the statement is:Â  (1) part
of the res gestae of the offense or
arrest, (2) part of a statement or conversation already offered by the State,
or (3) necessary to explain or contradict evidence first offered by the State. Id. (citing Singletary v. State, 509 S.W.2d 572, 576 (Tex.Crim.App. 1974)).Â  The theory behind the third exception is to
prevent the fact finder from being misled or perceiving a false, incorrect
impression when hearing only a part of an act, declaration, conversation, or
especially, a writing.Â 
Reado v. State,
690 S.W.2d 15, 17 (Tex.App.--Beaumont 1984, pet. ref'd).[4]

Â Â Â Â Â Â Â Â Â Â Â  Here, Appellant makes no contention that his statements
were part of the res gestae of the
offense, and the record does not show that the State made any effort to proffer
any portion of Appellant's statements in its case-in-chief or at any other time.Â  Therefore, Appellant is unable to prove
either the first or second exceptions.Â  

Â Â Â Â Â Â Â Â Â Â Â  In addition, there is no showing that Appellant's
out-of-court statements to Detective Milner were necessary to correct a false
or incorrect impression created by Detective Milner's testimony regarding W. H.'s
self-described motivation for injuring Appellant.Â  Here, Appellant sought to use his out-of-court
statements to contradict or assert an alternative version of the events
described by W. H. through Detective Milner's testimony.Â  As such, Appellant's statements were not
necessary to clear up any misconceptions for the jury regarding how or why the
events described by W. H., through Detective Milner's testimony, occurred.Â  Detective Milner's account of W. H.'s
statement regarding Appellant's rib injury was complete.Â  That the State did not
present exculpatory or explanatory testimony favoring Appellant in its
case-in-chief does not equate to misleading the jury or leaving the jury with
only a partial or incomplete version of the facts.Â  In fact, the State did proffer W. H. as a
witness during its case-in-chief and during cross-examination,
W. H. indicated that he injured Appellant's ribs while they were playing on
Appellant's living room floorÂ Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Further, it has been held that, when the accused does not
take the stand, self-serving statements are not admissible when they are merely
contradictory to some act or declaration first proffered by the
prosecution.Â  Starks v. State, 776 S.W.2d 808, 811
(Tex.App.--Fort Worth 1989, pet. ref'd) (citing Reado, 690 S.W.2d at 17).Â 
Here, Appellant did not testify.Â  Therefore,
if the trial court had admitted Appellant's statements, there would have been
no opportunity to cross-examine Appellant on his statements to Detective
Milner.Â  Under the circumstances, to admit
Appellant's self-serving statements in the State's case-in-chief would permit
any defendant to place his version of the facts before the jury through hearsay
statements without being subject to cross-examination.Â  See
Reado, 690 S.W.2d at 17 ("To adopt Appellant's position would mean
that all self-serving statements by an accused would be admissible.")Â  Accordingly, we find the trial court did not
abuse its discretion in excluding Appellant's self-serving statements.[5]


Â Â Â Â Â Â Â Â Â Â Â  Renteria v. State,
206 S.W.3d 689 (Tex.Crim.App. 2006), is of no assistance to Appellant.Â  In Renteria,
the Criminal Court of Appeals determined it was error not to admit a
defendant's self-serving statement to police wherein he expressed remorse after
the State presented expert testimony at trial, based on hypotheticals supported
by the record, that a person like the defendant would be a future danger to
society in part because the hypothetical person was unremorseful.Â  Id. at 694-98.Â  Unlike
Renteria wherein the State depicted the
defendant as unremorseful through hypotheticals, here, Detective Milner's
testimony merely described W. H.'s account of his motivation for injuring Appellant while saying nothing of
Appellant's state of mind or motivation at the time he was injured.Â  As such, this case is more like Starks, supra, wherein the trial court properly excluded a defendant's
self-serving statement that his gun went off accidently as opposed to
intentionally; Starks, 776 S.W.2d at
811, or Walck v. State, 943 S.W.2d
544 (Tex.App.--Eastland 1997, pet. ref'd), wherein the trial court properly
excluded a defendant's self-serving statements to his psychologist intended to
establish his state of mind at the time of the offense.Â  Id. at 545.Â  In both cases, as here, the excluded
statement does not contradict an act or declaration, but instead merely seeks
to contradict the State's evidence of intent.Â 
Appellant's single point of error is overruled.

Conclusion

Â Â Â Â Â Â Â Â Â Â Â  The trial
courtÂs judgment is affirmed.Â Â  

Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â Â Â Â Â Â Â  Patrick A. Pirtle

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â  Â Â Â Â Â  JusticeÂ  

Do not publish.











[1]See Tex. Penal
Code Ann. Â§ 22.011(a)(2) (West Supp. 2010).Â  





[2]In a separate cause number, Appellant
was also convicted of a third offense of sexual assault of a child and assessed
a five year sentence to be served concurrently with the first of his two
eighteen year sentences.Â Â  Â 





[3]In his oral and written statements to
Detective Milner, Appellant described W. H. as an aggressor who broke
Appellant's ribs when he refused to perform sexual acts on W. H.





[4]This is the so-called rule of
optional completeness, a common-law doctrine that is a recognized exception to
the hearsay rule.Â  See Walters, 247 S.W.3d at 218.Â  This rule is one of admissibility and permits
the introduction of otherwise inadmissible evidence when the evidence is
necessary to fully and fairly explain a matter "opened up" by the
adverse party.Â  Id.Â  (citing
Parr v. State, 557 S.W.2d 99, 102
(Tex.Crim.App. 1977)).Â  That said,
however, simply "opening up the door," does not automatically require
admission of otherwise inadmissible evidence under the rule of optional
completeness.Â  Sauceda v. State, 129 S.W.3d 116, 122
(Tex.Crim.App. 2004); Kipp v. State,
876 S.W.2d 330, 337 (Tex.Crim.App. 1994).Â  Rule 107 of the Texas Rules of Evidence
indicates that, in order to be admitted, the omitted portion of the statement
must be Âon the same subjectÂ and must be Ânecessary to make it fully
understood."Â  Tex.
R. Evid. 107.





[5]Even if Appellant's cross-examination
of Detective Milner may have somehow misled the jury or created a false
impression in their minds as Appellant suggests, this does not make his
self-serving out-of-court statements admissible.Â  Renteria v. State, 206 S.W.3d 689, 705 (Tex.Crim.App. 2006).Â Â